**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Samuel Benally, | ) No. 13-CV-8096-PCT-PGR |
|       Plaintiff, | ) |
| | ) |
| vs. | ) **ORDER** |
| | ) |
| Office of Navajo and Hopi Relocation, | ) |
| | ) |
|       Defendant. | ) |

Before the Court are the parties' motions for summary judgment. (Docs.14, 22). Plaintiff seeks relief from a denial of relocation assistance benefits by Defendant Office of Navajo and Hopi Indian Relocation ("ONHIR"). For the reasons set forth below, the Court will grant Defendant's motion for summary judgment and deny Plaintiff's motion.

**Background**

Plaintiff is an enrolled member of the Navajo Nation subject to relocation from his home on the Hopi Partitioned Lands ("HPL") as a consequence of the Navajo-Hopi Settlement Act, 25 U.S.C. §640d et seq. ONHIR is an independent federal agency created by Congress pursuant to carry out the relocation of members of the Navajo and Hopi Tribes who resided on land that was partitioned to the other tribe, and to provide relocation assistance benefits for all households required to relocate. Plaintiff and his family moved from HPL on August 9, 1983.

On March 12, 2009, Plaintiff applied for relocation benefits under 25 CFR § 700.138. (Doc. 8-1, Ex. 1.) The application was denied based on a finding that Plaintiff was "not a

head of household" because he was not "self-supporting (earning $1,300 per year or more)." (*Id.*, Ex. 4.)

Plaintiff filed an appeal and a hearing was held July 9, 2010. The Hearing Officer issued a decision on September 10, 2010, denying the appeal and finding that Plaintiff was a "dependent minor" at the age of 18 when his family moved from the HPL and had not attained head of household status prior to the move-off. (Doc. 8-3, Ex. 16.) Plaintiff submitted objections, which the Hearing Officer denied on April 8, 2011. (*Id.*, Ex. 20.) Plaintiff did not seek review, and on July 18, 2011, ONHIR issued its Final Agency Action affirming the Hearing Officer's decision. (*Id.*, Ex. 21.)

## Standard of Review

Under the Administrative Procedure Act ("APA"), an aggrieved party may sue to set aside a final non-discretionary agency action that is arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with the law. *See* 5 U.S.C. § 702, 706(2)(A), (2)(E). "In reviewing agency action, the reviewing court can reverse only if the agency action was arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence." *Bedoni v. Navajo–Hopi Indian Relocation Com'n*, 878 F.2d 1119, 1122 (9th Cir. 1989.) Where a court conducts judicial review pursuant to the APA, "summary judgment is an appropriate mechanism for deciding the legal question of whether the agency could reasonably have found the facts as it did." *Occidental Engineering Co. v. Immigration and Naturalization Service*, 753 F.2d 766, 770 (9th Cir. 1985).

An agency action is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). "The arbitrary and capricious standard is 'highly

1    deferential, presuming the agency action to be valid and [requires] affirming the agency

2    action if a reasonable basis exists for its decision.'" *Kern County Farm Bureau v. Allen*, 450

3    F.3d 1072, 1076 (9th Cir. 2006) (quotation omitted). Review under this standard is "exacting,

4    yet limited." *Id.* The court "may not substitute [its] judgment for that of the agency." *Id.*

5                                   **Discussion**

6    **1.    Head of Household**

7           To be entitled to relocation benefits Plaintiff bore the burden of showing that he had

8    attained "head of household status" by the time he and his family moved from HPL. 25 CFR

9    § 700.147. To show he was a head of household, Plaintiff, who was neither married nor a

10   parent at the time he moved form HPL, had to prove that he "actually maintained and

11   supported himself." 25 CFR § 700.69(a)(2). To be considered self-supporting, ONHIR

12   regulations required Plaintiff to establish that he earned $1,300 per year in income.[1]

13          The Hearing Officer found that Plaintiff, who was born in 1965, was a student during

14   the 1981–82 and 1982–83 school years, attending high school as a ninth grader in Snowflake,

15   Arizona, living in the dormitory there and returning to his parents' home on weekends.[2]

16   (Doc. 8-3, Ex. 16 at 2.) While in school, Plaintiff enrolled in an upholstery class and a

17   woodworking class which met for one hour on school days. (*Id.* at 2–3.) The school provided

18   the materials for upholstery projects such as bags and jewelry boxes. (*Id.*).

19
20          Plaintiff sold some of the items he crafted at school, but he kept no records of what

21   he sold or what his income was. (*Id.* at 3.) In June and July of 1983 Plaintiff also worked on

22   ─────────────────

23       [1]  Both parties also cite the so-called HoH Memo, a memorandum prepared by
     ONHIR's former legal counsel addressing the "Criteria for Determination of Self-

24   Supporting." (Doc. 14, Ex. 1.) The memo states, in relevant part, "Individuals who were still
     high school students at the time of certification, regardless of age, and applicants less than

25   18 years old will be scrutinized more closely and will require substantiation of income and
     independence to rebut the normal presumption of dependence." (*Id.* at 2.)

26
27       [2] The hearing  transcript indicates that Plaintiff repeated the ninth grade during the
     1982–83 school year.

28

a fencing project on the San Carlos Indian Reservation, reportedly earning $75 a week and living with his sister. (*Id.*) He also worked in the Summer Youth Employment Program at a Navajo Chapter house for one month. (*Id.*) According to his Social Security earnings record, Plaintiff earned $428 in 1981, $174 in 1982, and $730 in 1983. (*Id.*) Plaintiff also asked for and received money from his parents. (*Id.*)

The Hearing Officer concluded that Plaintiff was not a self-supporting head of household when he left the HPL because his basic personal needs for food and shelter were met by the school and dormitory and by his parents. (*Id.* at 5.) The Hearing Officer also concluded that Plaintiff's income from crafts and summer work was insufficient to establish he was self-supporting as of August 1983. (*Id.*)

Plaintiff contends that ONHIR's decision that he was not a head of household by August 9, 1983, is arbitrary and capricious and not supported by substantial evidence. (Doc. 14.) The Court disagrees.

Plaintiff contends that he had "undisputed earnings of $1405 for 1983" and therefore exceeded the $1300 necessary to establish the presumption that he had attained head of household status. (Doc. 25 at 5.) He asserts that in June and July of that year he worked building fences, earning $675, and in August earned $730 working in the Summer Youth Program. (Doc. 26, ¶ 9.) Even assuming these figures are accurate, Plaintiff left the HPL on August 9, 1983, so that his earnings for August prior to the move off would have been less than $200. Added to the $675 he reportedly earned building fences in June and July, his total earnings fell short of $1300. Therefore, the findings of the Hearing Officer are supported by substantial evidence and neither arbitrary nor capricious.

Plaintiff also claimed to have earned $100 per month selling crafts he made during the school year. The Hearing Officer also found that this claim was "totally unsupported by contemporaneous documentation" and "exaggerated and not credible" based on the limited time available to Plaintiff to make the items—specifically, the second semester of the

1982–83 school year—and the "limited universe of buyers," which consisted of friends, relatives, and the occasional cowboy. (Doc. 8-3, Ex. 20 at 4.) Again, this finding was not arbitrary and capricious or unsupported by the evidence.

In sum, at the time of the move off, Plaintiff was an 18-year-old ninth grader who lived in a dormitory during the school year and with his parents on weekends and during the summer. As he explained in his Application for Relocation Benefits, he moved off the HPL because, "I didn't have a choice, I was still a teenager and had to move w/my parents . . ." (Doc. 8-1, Ex. 1 at 6.) Plaintiff's claim to have earned more than $1300 in 1983 was not substantiated by the evidence. Viewing these facts with the deference owed to agency decisions, the Court affirms the finding of the ONHIR that Plaintiff did not meet his burden of showing that he a head of household at the time of the move-off.

**2.      Fiduciary duty**

Plaintiff contends that ONHIR's decision to deny relocation benefits violated the "trust responsibility" imposed on the agency by *Bedoni*. The Court disagrees.

*Bedoni* noted that Settlement Act imposes an "affirmative duty to manage and distribute . . . funds . . . such that the displaced families received the full benefits authorized for them." 878 F.2d at 1124–25. The court held that the Navajo-Hopi Indian Relocation Commission breached its fiduciary obligation when it incorrectly advised a family not to include their children in their relocation application. *Id.* at 1125. While *Bedoni* recognized an obligation for the Commission to assist the family in securing the maximum allowable funds, the case does not alter the standard by which ONHIR determines whether an applicant is entitled to relocation benefits.

### Conclusion

For the reasons stated above, Defendant ONHIR's decision to deny relocation benefits was not arbitrary, capricious, or an abuse of discretion. It was in accordance with law and supported by substantial evidence. Therefore, Defendant is entitled to summary judgment.

1    Accordingly,

2    IT IS HEREBY ORDERED denying Plaintiff's motion for summary judgment (Doc.

3    14).

4    IT IS FURTHER ORDERED granting Defendant's cross motion for summary

5    judgment (Doc. 22).

6    IT IS FURTHER ORDERED that the Clerk of Court shall enter judgment

7    accordingly.

8    DATED this 10th day of February, 2014.

9

10

11   Paul G. Rosenblatt
     United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28